# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT VINCENT VASQUEZ,

      Plaintiff,

v.                                            No. 1:20-cv-0612 RB/DLM

JULIE JONES; ALISHA TAFOYA LUCERO;
GEO GROUP, INC.; JANINE RODRIGUEZ;
CENTURION CORRECTIONAL HEALTHCARE
OF NEW MEXICO; WEXFORD HEALTH
SOURCES, INC.; CHRISTOPHER BROWLEY;
MATT MEEHAN; GINA LUTZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Julie Jones, Alisha Tafoya Lucero, and Janine Rodriguez's (the NMCD Defendants) Motion for Judgment on the Pleadings. (Doc. 109.) The NMCD Defendants contend that Plaintiff Robert Vasquez fails to state claims against them and, additionally, that they are entitled to qualified immunity. For the reasons discussed in this Opinion, the Court will grant the motion and dismiss with prejudice Vasquez's claims against the NMCD Defendants.

**I.     Factual and Procedural Background**[1]

    **A.     Relevant Facts**

Vasquez was an inmate at Northeast New Mexico Correctional Facility (NENMCF). (*See* Doc. 13 ¶ 12.) Both Jones and Tafoya Lucero served as Secretary of Corrections at different times and had "a duty to adopt rules and regulations necessary for administration of the Corrections Act,

---

[1] The Court recites the facts as alleged in the June 1, 2021 Amended Complaint. (Doc. 13.)

and [to] enforce and administer those so adopted." (*See id.* ¶¶ 3–4.) Rodriguez was NENMCF's Grievance Officer. (*Id.* ¶ 6.) GEO Group, Inc. (GEO) operated NENMCF. (*Id.* ¶ 5.) The remaining defendants, whom the Court refers to as the Centurion and Wexford Defendants, were responsible for providing healthcare-related services at NENMCF. (*See id.* ¶¶ 7–11.)

On January 28, 2019, Vasquez was attacked and injured by other inmates. (*Id.* ¶ 16.) Relevant to this motion, Vasquez alleges that NENMCF suffered from security failures, understaffing, insufficient training, and an inadequate classification system that allowed high profile violent offenders to be housed at NENMCF, which was not designed to house them.[2] (*Id.* ¶ 12.) Vasquez alleges that Jones knew the facility's "understaffing was dangerously inadequate" because from May 2017 through November 2019, the New Mexico Department of Corrections (DOC) fined GEO as a result of the understaffing problem. (*Id.* ¶ 13.) Specifically, he asserts that "[t]here was an arrangement between the State where GEO could simply pay a fine instead of safely staffing the prison . . . ." (*Id.* ¶ 14.)

On the day of the attack, only one correctional officer was on the floor in Vasquez's unit, which contained approximately 300 inmates. (*See id.* ¶ 15.) Vasquez was not found for approximately six hours after the attack. (*Id.* ¶ 17.) He asserts that Centurion had only one staff member (Brawley) available to treat him, and Brawley did not provide adequate or timely treatment. (*See id.* ¶¶ 19, 22.)

Vasquez asserts that Rodriguez participated in the later denial and/or delay of his medical care by intentionally refusing to forward his emergency medical grievances to the appropriate

---

[2] Vasquez asserts that the attack was "proximately caused" by Jones and Tafoya Lucero's "deliberate indifference" to these conditions. (Doc. 13 ¶ 12.) This is a legal conclusion, and the Court need not accept it as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (quotation omitted).

2

office, by not following grievance policies and procedures, and by failing to file all his grievance documents. (*See id.* ¶¶ 37–49.) Vasquez alleges that Rodriguez acted in an effort to retaliate against him for filing grievances. (*Id.* ¶ 62.) Finally, he asserts that he sent a letter to Tafoya Lucero informing her of Rodriguez's conduct, but Tafoya Lucero provided no response or relief. (*See id.* ¶¶ 50, 65.)

### B. Procedural History

Vasquez, proceeding pro se, filed his original Civil Rights Complaint in this Court on June 24, 2020, and an amended complaint on July 14, 2020. (Docs. 1; 4.) He filed his second amended complaint, the operative complaint in this lawsuit, on June 1, 2021. (Doc. 13.)

On April 29, 2022, counsel entered an appearance on Vasquez's behalf. (Doc. 36.) Through counsel, Vasquez moved to amend his complaint for a third time on May 6, 2022. (Doc. 42.) United States Magistrate Judge Kevin Sweazea entered Proposed Findings and Recommended Disposition (PFRD) recommending that the motion to amend be denied. (Doc. 63.) The Court adopted the PFRD and denied the motion on February 15, 2023. (Doc. 68.)

On March 16, 2023, GEO moved to dismiss the claims against it for insufficiency of service of process. (Doc. 70.) On September 12, 2023, the Court granted GEO's motion. (Doc. 93.)

On November 2, 2023, the NMCD Defendants filed their Motion for Judgment on the Pleadings. (Doc. 109.) The motion is fully briefed and ready for ruling. (Docs. 115; 117.)

## II. Legal Standards

### A. Pro Se Litigant

Because Vasquez filed his second amended complaint pro se, the Court will construe his pleading liberally and hold it "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1006, 1110 (10th Cir. 1991) (citations omitted). This "does

3

not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

### B. Motions to Dismiss Under Rule 12(c)

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

### C. Qualified Immunity

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet his burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied Cummings v. Bussey*, 140 S. Ct. 81 (2019).

4

**III.    Analysis**

    **A.    The Court denies Vasquez's motion to amend and will consider only those claims alleged in the current operative complaint.**

Vasquez brings the following claims against the NMCD Defendants in his Amended Complaint:

(1) Violations of the Eighth Amendment against Jones and Tafoya Lucero for failure to protect;

(2) Violations of the Eighth Amendment against Rodriguez for denial or delay of medical care or treatment; and

(3) Violations of the First Amendment against Rodriguez and Tafoya-Lucero for retaliation against Vasquez for filing grievances and for failure to follow their grievance policies.

(*See* Doc. 13 at 1, 14–18.)

In his response brief, Vasquez frames his argument as if he had also pleaded an Eighth Amendment claim against Jones and Tafoya-Lucero for delay or denial of medical care.[3] (*See id.* at 17.) He did not. Moreover, the Court has already denied Vasquez's most recent motion to amend (*see* Doc. 68), and Vasquez's summary request to amend does not follow appropriate procedure. (*See* Doc. 115 at 24.) *See also* D.N.M. LR-Civ. 15.1. As explained below, even if Vasquez had properly pleaded this claim against all NMCD Defendants, the claim would fail.

    **B.    The Court will dismiss the Eighth Amendment failure to protect claim.**

Vasquez asserts an Eighth Amendment claim under 42 U.S.C. § 1983 for supervisory

---

[3] The NMCD Defendants argue that Vasquez did not plead the failure to protect claim against Tafoya Lucero. (*See* Doc. 113 at 4.) It is true that Vasquez did not name Tafoya Lucero in the paragraphs under his First Cause of Action. (*See* Doc. 13 ¶¶ 51–53.) He did, however, name her in his summary of the claims on the first page of the amended complaint. (*See id.* at 1.) Construing Vasquez's claims liberally, the Court finds he adequately named Tafoya Lucero in his first claim.

5

liability against Jones and Tafoya Lucero for failure to protect him from assaults by other inmates. (*See* Doc. 13 ¶¶ 51–53.) Prisoners have an Eighth Amendment "right to be reasonably protected from" assaults and violence from other inmates. *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quoting *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980)). Thus, "a prison official's deliberate indifference to a substantial risk of serious harm to an inmate implicates the Eighth Amendment." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)) (quotation marks omitted). To maintain a failure to protect claim, the inmate must establish two elements. *See id.* "First, an inmate 'must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). Second, he must demonstrate the official was "deliberately indifferent to the inmate's health or safety." *Id.* (citing *Farmer*, 511 U.S. at 834). To demonstrate deliberate indifference, the inmate must allege facts to show the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually "[drew] the inference." *Id.* (quoting *Farmer*, 511 U.S. at 834).

To hold an official liable under a theory of supervisory liability, the inmate "must show an 'affirmative link' between the supervisor and the constitutional violation." *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). To show an affirmative link, the inmate must establish more than "mere knowledge," but must demonstrate "(1) personal involvement; (2) causation; and (3) state of mind." *Id.* (quoting *Schneider*, 717 F.3d at 767; citing *Dodds*, 614 F.3d at 1195). The Court finds that Vasquez's claim against Jones and Tafoya Lucero must be dismissed because he fails to plead facts to establish causation or state of mind.

To show causation, a plaintiff must show that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the

plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768 (citations omitted). The only specific allegations on this issue regarding Jones and Tafoya Lucero is that they: (1) failed to find and train enough staff and (2) knew the facility was understaffed due to the State's "arrangement" with GEO that allowed GEO to "pay a fine instead of safely staffing the prison . . . ." (*See* Doc. 13 ¶¶ 13–14, 17.) Vasquez does not plead facts to show there were other instances of inmate-on-inmate violence, delayed treatment, or inadequately treated injuries at the hands of poorly trained healthcare professionals. Consequently, he fails to show Jones or Tafoya Lucero knew or should have known that their failure to hire and train staff "would cause others to deprive [Vasquez] of [his] constitutional rights." *See Schneider*, 717 F.3d at 779 (citations omitted). In short, Vasquez has not demonstrated causation.

Vasquez can establish "the requisite state of mind by showing that [Jones and Tafoya Lucero] acted with deliberate indifference." *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (quotation marks and citation omitted). In this context, the parties discuss *Savage v. Fallin*, 663 F. App'x 588 (10th Cir. 2016), a case the Court finds instructive. There, a prisoner alleged a failure to protect claim and pleaded facts to show "endemic prisoner-on-prisoner violence" including a homicide and a "brawl involving 70 inmates." *Id.* at 590. He also alleged facts to show unsafe conditions due to overcrowding and understaffing such as inadequate sanitation, maintenance failures, and rodent infestations. *See id.* Savage alleged that the facility's warden "failed to appropriately discipline inmates" and had reason to know that the previous warden made "public statements . . . decrying understaffing at the facility." *Id.* at 594. He further averred that the DOC director not only made statements acknowledging "that prison understaffing has created dangerous situations[,]" but also "personally made the decision to transfer inmates" to the facility, which "caus[ed] overcrowding . . . ." *See id.* The Tenth Circuit held that these

allegations demonstrated sufficient circumstantial evidence to conclude that the warden and DOC director knew of and were deliberately indifferent to a substantial risk of harm. *See id.*

Here, Vasquez alleges no "more than generalized conditions at the prison," such as inadequate staffing and training, without pleading facts to show that Jones or Tafoya Lucero were aware of any substantial risk of harm.[4] *See Green v. Padilla*, 484 F. Supp. 3d 1098, 1159 (D.N.M. 2020). Moreover, while Vasquez briefly mentions insufficient training and an inadequate classification system that allowed high profile violent offenders to be housed at NENMCF, he does not connect these alleged deficiencies to his injury. (*See* Doc. 13 ¶ 12.) He does not explain why the training was deficient or how it resulted in the attack or his injuries, nor does he demonstrate that Jones or Tafoya Lucero had notice of the alleged inadequate training. Vasquez does not allege that "high profile violent offenders" were responsible for his injury, or that Jones or Tafoya Lucero knew that such inmates had previously carried out similar attacks at NENMCF.

Because Vasquez fails to plead facts to demonstrate causation or state of mind, his failure to protect claim must be dismissed. Jones and Tafoya Lucero are entitled to qualified immunity.

### C. The Court will dismiss the Eighth Amendment denial/delay of medical care claims.

Vasquez asserts an Eighth Amendment claim under 42 U.S.C. § 1983 for denial or delay of medical care against Rodriguez based on her alleged conduct in failing to investigate and/or

---

[4] Vasquez believes the Tenth Circuit's decision in *McDaniels v. McKinna*, 96 F. App'x 575 (10th Cir. 2004), supports his position. (*See* Doc. 115 at 15.) In *McDaniels*, an inmate was injured during a prison yard fight after a football game. 96 F. App'x at 579–80. He submitted evidence to show there was only one recreation coordinator "in the yard at the time of the fight[,]" and the recreation coordinator failed to intervene to protect him. *Id.* at 579. The Tenth Circuit found the "conclusory assertions that one officer was not enough" inadequate. *See id.* Without more—for example, evidence to establish "what staffing level would have been appropriate" or that "one officer had been insufficient in the past to quell fights that broke out after football games"—the failure to protect claim failed. *See id.* The Tenth Circuit also found it telling that the recreation coordinator did not have "prior knowledge of any specific threat to [the inmate's] safety." *See id.* Vasquez contends that Jones and Tafoya Lucero's knowledge of the fines against GEO constituted such knowledge of a risk of harm. (*See* Doc. 115 at 15–16.) As explained above, the Court disagrees that knowledge of the fines imputes knowledge of the specific risk of harm Vasquez suffered.

improperly denying his grievances. (*See* Docs. 13 ¶¶ 58, 60; 115 at 21.) "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

### 1. Denial of Medical Care Against Rodriguez

To state a claim for denial of medical care, a plaintiff must first "produce objective evidence that the deprivation at issue was in fact sufficiently serious." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Mata*, 427 F.3d at 751). The plaintiff must also allege "that the official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must [have been] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference.'" *Id.* (quoting *Mata*, 427 F.3d at 751).

The NMCD Defendants argue that Vasquez fails to plead facts to show that his condition was so obvious that even a lay person like Rodriguez would have recognized the need for treatment. (*See* Doc. 109 at 17.) Vasquez fails to address this argument in his response brief. (*See* Doc. 115.) The Court will recount the relevant facts from the Amended Complaint. Vasquez alleges that in November 2019, the Centurion and Wexford Defendants inexplicably discontinued medication that he had been prescribed. (*See* Doc. 13 ¶¶ 27–29.) He asserts that between November 2019 and March 2021, the Centurion and Wexford Defendants "had a custom and practice of telling [Vasquez] they would provide a new treatment for his nerve damage . . . at medical examinations but" did not follow through in either ordering or dispensing the prescribed treatment.

9

(*Id.* ¶¶ 29–30.) Vasquez alternatively asserts that the Centurion and Wexford Defendants refused to follow up "to see if the treatment was effective . . . ." (*Id.* ¶ 31.) Although it is clear Vasquez filed some grievances about his treatment (*see, e.g.*, *id.* ¶ 32 (noting that Defendants were put on notice of his complaints "through the grievance process" but "took no corrective action")), he alleges that Rodriguez delayed or denied his medical care by "refusing to forward" Emergency Medical Grievance appeals in February and December 2020 (*id.* ¶¶ 43, 46). Critically, Vasquez offers no facts regarding his medical condition at that time, nor does he assert that Rodriguez would have had notice of a serious medical condition through, for example, the information in the grievance forms. Consequently, he fails to demonstrate either that his medical condition was sufficiently serious or that Rodriguez was aware that her conduct posed a substantial risk of serious harm to Vasquez. *See Requena*, 893 F.3d at 1215. The Court finds that Vasquez fails to adequately plead a claim for denial of medical care against Rodriguez.

Moreover, in response to Rodriguez's argument that she is entitled to qualified immunity, Vasquez wholly fails to show that Rodriguez's conduct violated clearly established law. (*See* Doc. 109 at 19.) Instead, he states that the United States Supreme Court "recently suggested that a Plaintiff need not[,] in every situation, point to a case that is sufficiently factually similar." (Doc. 115 at 23 (citing *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020)).) *Taylor* involved an Eighth Amendment claim where a prisoner "was confined to "shockingly unsanitary cells," including a drain that overflowed "with raw sewage, which he was forced to sleep in naked." *See Truman v. Orem City*, 1 F.4th 1227, 1240 (10th Cir. 2021) (discussing *Taylor*, 141 S. Ct. at 53). Although the prisoner "could not identify a case in which a court held that an inmate confined to extremely unsanitary cells for six days offends the Constitution[,]" the Supreme Court opined "that he did not have to." *See id.* It explained that "no reasonable correctional officer could have concluded

that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." *Id.* (quoting *Taylor*, 141 S. Ct. at 53). The Court does not find that Rodriguez's conduct in denying emergency medical grievances, particularly where Vasquez fails to allege facts to show his condition was obvious, rises to the level of the "extreme circumstances" present in *Taylor*. Consequently, Rodriguez is entitled to qualified immunity on Vasquez's denial of medical care claim.

### 2. Denial of Medical Care Against Jones and Tafoya Lucero

As noted above, Vasquez argues in his response brief, but not in his Amended Complaint, that Jones and Tafoya Lucero are also liable for denial of medical care. (*See* Docs. 115 at 20–22; 117 at 3–4 (citing Docs. 13 at 15–16; 115 at 20–22).) To hold Jones and Tafoya Lucero liable under a theory of supervisory liability, Vasquez must demonstrate their "(1) personal involvement; (2) causation; and (3) state of mind." *Est. of Booker*, 745 F.3d at 435. (quoting *Schneider*, 717 F.3d at 767; citing *Dodds*, 614 F.3d at 1195). Here, the only facts attributable to Jones and Tafoya Lucero are that they were responsible for adopting rules and regulations for the administration of NENMCF. (*See* Doc. 13 ¶ 4.) Vasquez asserts in his response brief that their alleged "failure to do so resulted in Centurion having only" one staff member (Brawley) available on the night Vasquez was stabbed, who did not treat Vasquez for internal bleeding or blood loss. (*See id.* ¶ 19; Doc. 115 at 20–21.) Vasquez also concludes that their failure to adopt adequate regulations led to an inadequate "system for responding to emergencies," which resulted in Vasquez waiting 1.5 hours before he was transported to a hospital. (*See* Docs. 13 ¶ 22; 115 at 21.) The Court finds these facts insufficient to meet the causation or state of mind prongs.

The Amended Complaint is devoid of factual allegations to show that Jones or Tafoya Lucero had knowledge that NENMCF had insufficient medical staff, that the staff was not

11

adequately trained, or that emergency protocols were inadequate and had resulted in the delay of medical treatment. Thus, Vasquez has not adequately alleged that Jones or Tafoya Lucero "set in motion a series of events that [they] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *See Schneider*, 717 F.3d at 768 (citations omitted).

Vasquez asserts only one factual allegation relevant to state of mind: he alleges that he sent a letter to Tafoya Lucero in October 2020 detailing Rodriguez's "misconduct" regarding his grievances. (Doc. 13 ¶ 50.) This is simply inadequate to show that Jones or Tafoya Lucero had any knowledge of a substantial risk of serious harm here. As a result, Vasquez's denial of medical care claim fails against these defendants.

### 3. Delay of Medical Care Against Rodriguez

To state a claim for delay of medical care, the plaintiff must "show that the delay resulted in substantial harm." *Requena*, 893 F.3d at 1216 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (quoting *Garrett*, 254 F.3d at 950). The NMCD Defendants mention this standard in their motion, but Vasquez fails to respond on this point. (*See* Docs. 109 at 12, 17; 115 at 21.) The Court agrees that Vasquez fails to plead facts to show that Rodriguez's conduct resulted in substantial harm. The delay of medical care claim fails as brought against Rodriguez.

### 4. Delay of Medical Care Against Jones and Tafoya Lucero

Any delay of medical care claim fails against Jones and Tafoya Lucero for the same reason that the denial of medical care claim fails: Vasquez fails to plead facts to show causation or state of mind. The Court will dismiss this claim as to these defendants.

**D.     The Court will dismiss the First Amendment retaliation claim.**

Finally, although the NMCD Defendants argue that Vasquez's First Amendment retaliation claim should be dismissed (*see* Doc. 109 at 17–9), Vasquez fails to mount any argument that the claim should remain. In fact, Vasquez acknowledges that the asserted constitutional right based on grievance procedures fails, and he does not include his First Amendment claim among "[t]he three issues that remain to be decided . . . ." (Doc. 115 at 3.) Accordingly, the Court will dismiss this claim.

**IV.     Conclusion**

The Court finds that Vasquez fails to plead facts sufficient to state claims for failure to protect, denial of medical care, or delay of medical care against the NMCD Defendants. Accordingly, the NMCD Defendants are entitled to qualified immunity, and the Court dismisses these claims with prejudice. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing district court to grant a motion to dismiss based on qualified immunity with prejudice). The Court will also dismiss the First Amendment retaliation claim with prejudice, as Vasquez concedes the claim is subject to dismissal.

**THEREFORE,**

**IT IS ORDERED** that the NMCD Defendants' Motion for Judgment on the Pleadings (Doc. 109) is **GRANTED**, and Vasquez's claims against Rodriguez, Jones, and Tafoya Lucero are dismissed with prejudice.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE